By the Court,

Nelson, C. J.
R. Bond, the elder, was in possession and *299 occupation of the premises in question, claiming title as early as 1767, and continued such possession down to about 1780, when he left the country. In some of the previous cases which have been before us relative to this property, it appeared that he went to Canada, and joined the British. He left a wife and six children in possession, who lived together on the farm until the daughters were married. The wife of the plaintiff was the youngest, and married about 1787. The father died about 1790. Thus it appears, that the father of the wife of the plaintiff and the family, were in the actual possession and occupation for the period of some 38 years, 23 of which were during the life time of the former. For several years after Bond left, his wife managed the farm. She leased it two years ; and after-wards carried it on herself, with the assistance of her children. It turns out, that in point of fact, Bond had no paper title to some 40 or 50 acres of the farm ; but his dwelling house and barn were on that part of the premises, with some 20 acres under cultivation, and the whole fenced. In 1789 while the children were thus living with their mother, two of the sons (Samuel and Joseph,) took a lease to themselves from the Dutch Church, of a portion of the farm including that for which their father had no *deed; and this title is now set up in bar of the claim of the [ *392 ] co-heir.
The defendant stands in no better condition that Samuel and Joseph, and the main question is, whether they could set up an outstanding title under the circumstances of the case, to defend a possession, thus acquired in common with the other children, to the exclusion of the latter. I am of opinion they cannot; they must first surrender possession, and assert their subsequently acquired title, if they have one, by ejectment.
The rule of law, that a persen coming into possession of lands under the agreement, or license of another, cannot be permitted to deny the title of the latter, when called upon to surrender, is of almost universal application. Even if he had a valid title at the time, he is deemed to have waived it, and as between the parties to have admitted title in the person under whom he entered, 7 Cowen, 637 ; 3 Ad. & Ell. 188 ; 2 Id. 17. In one of these cases, the K. B. held, that the rule applied to the case of a license to enter for a temporary purpose. Denham, Oh. J. said, the defendant thereby waived any title which she might previously have been able to assert: she held possession through a license, whether for a longer or shorter time, was immaterial. She cannot claim against the party by whom she was let in: that party, as between them, has the title. Applying this principle to the case before us, how does it stand. The ancestor takes possession of a farm, occupying and improving it for thirteen years, and then abandons it to his wife and children. They continue the like occupation and enjoyment till .the daughters are married, and the mother dies, leaving the two-sons remain *300 ing. It is manifest their possession is derived from the father and the other children. Until the death of the father, the mother may be regarded as representing him and managing the estate. She did so in point of fact. On his decease, it descended to all the children as tenants in common, the mother continuing to occupy as guardian in socage for those under age, 7 Johns. It. 157. Samuel and Joseph were therefore, as completely in possession under him, and in subordination to his title, and the rights [ *393 ] of the co-heirs in 1789, when they took the lease, *as if he had let them in by an express license or agreement. This possession they have never surrendered, but continued to bold and enjoy it until it was transferred to the defendant.
It was strongly urged by the learned counsel for the defendant, that a person in possession may purchase in an outstanding title, for the purpose of strengthening his own, and that Samuel and Joseph had done nothing more. The principle I admit to the fullest extent, with this qualification, namely: that the possession has not been taken under circumstances that preclude him from disputing the title of the party claiming. The rule to which I have already adverted necessarily annexes this exception. No doubt the title of the church may. have been taken for the benefit of the widow and heirs, with a view to quiet their possession. There is nothing in the case, or in the relation in' which the parties stand, that could interfere with such a step.
What I contend for is, that one of the co-heirs having desired his possession from the common ancestor, as well as through his co-heirs, is disabled while standing upon this possession from disputing their title. I do not deny but the title thus attempted to be set up may be valid, nor but that the party may avail himself of it after surrendering this possession^ In a court of law, he clearly could. There might be considerations existing between the co-heirs that would lead a court of equity to declare the purchase to have been made for the benefit of all, upon proper terms. This is evidently the inclination of the mind of Chancellor Kent, in Van Horne v. Fonda, 5 Johns. Ch. R. 407.
. The case of Jackson v. Streeter, 5 Cowen, 529, involved the very point now in controversy. The reporter states correctly the principle decided ; that where one takes by descent as a co-heir and tenant in common, in ejectment by his co-heir or one claiming under him, he cannot shew the ancestor had no title. There the ancestor died in possession, leaving four children, of whom the defendant, who had remained in possession, was one. The lessor had acquired the interest of two of the others ; and one ground of defence was, that the ancestor had no title ; the offer to prove which, [ *394 ] was rejected, *and sustained on the principle already stated. The same doctrine will be found in The Proprietors of Baintree v. Battles, 6 Verm. R. 395, where the court say, it is very, clear that it is not com *301 petent for the defendant to resist the rights of his co-tenants, by setting up an adverse title in a stranger. The same general principle is illustrated in Jackson v. Hinman, 10 Johns. R. 292. The plaintiff claimed as purchaser, on sale under a judgment against Cr. B. docketted 21st December, 1809. The lien of the judgment went back to 1792. The defendant was in under L., who had taken a deed of the premises from G.B. in 1800, and entered under it; and showed that his landlord (L.) had subsequently acquired a. good adverse title; and the question was, whether the defence was admissible. The court held it was not, on the ground that L. coming in under the title from Gr. B. was estopped from denying it as against a purchaser under the same title, which overreached his ; that Gr. B. would not be permitted to gainsay it, and L. stood in his place.
Now, the case of the plaintiffs here combines in itself, every consideration upon which the principle above applied stands, and something more. The plaintiffs here not only proved a right to a portion of the title, under which Samuel and Joseph entered, paramount to them, but for a long time Angelica, one of the plaintiffs, possessed and enjoyed in common, all acknowledging the common source. Upon the above case, the fact that they entered and held under the ancestors title, and she shewing a paramount right to a share of it, would be enough. Having acquired their possession under it, they are not permitted to gainsay the title to the prejudice of one, claiming a better right to a portion of the property.
I admit that Samuel and Joseph might oust the co-tenant, and defeat her recovery by an adverse holding for twenty-five years, no disabilities existing; and that they might show the purchase of an outstanding title as part of the evidence in making out this defence. It would go to characterise their possession as hostile and adverse. But this stands upon an entirely different principle. The defence concedes the title of the co-tenant, and seeks to defeat it for the omission on *her part to assert it in prop- [ *395 ] er time. So in the case of Jackson v. Hinman, the defendent would not have been precluded from showing a bar by adverse possession; that ground would not be inconsistent with the principle upon which the decision was placed. An ouster alone of a co-tenant never constitutes a bar; it merely drives him to a legal remedy to gain possession.
The above view is applicable to the whole of the premises claimed by the plaintiffs ; and it will, therefore, be unnecessary to examine the question, whether the judge was right in instructing the jury that they might presume a grant in fee to Bond, the elder, of the portion covered by the Platte lease.
The jury have found that no ouster or adverse possession existed against Angelica at the time of her marriage with Ouderkirk, which took place about 1787, when she was under age; and it is quite clear their verdict is well *302 warranted by the evidence. The statute, therefore, could not begin to run against her until his death, about sixteen years before the commencement of the suit.
It is urged that the taking of the lease from the church by Samuel and Joseph in 1789, of the whole interest, had the immediate effect of ousting the co-tenants. That might be so, if Samuel and Joseph had held the sole •possession at the time; but the weight of the proof is that the family were occupying the premises the same as when Bond left them.
New trial denied.