## GARRETT *vs.* SCOUTEN.

Proceedings on a re-entry for non-payment of rent at common law and by statute stated. *Per* JEWETT, J.

Where one purchased land of the widow of a lessee in fee remaining in possession after the death of her husband, and afterwards took a conveyance from the heirs of the lessor; *held*, that mere length of possession under that conveyance would not raise the presumption of a re-entry for non-payment of the rent reserved by the lease.

Such a presumption will not be raised from lapse of time, unless it appears that the tenant had abandoned the possession, leaving rent in arrear.

Garrett *v.* Scouten.

Accordingly, where land was leased in fee reserving rent and with a clause of re-entry, in 1801, and the tenant entered and died in possession eight or nine years afterwards, and his widow remained in possession two or three years more and then sold to a stranger, who entered and in 1813 took a conveyance in fee from the heirs of the lessor, and the land was held under that title until the trial in 1844; in ejectment by the heirs of the lessee, *held* that a re-entry by the lessor or his heirs could not be presumed.

An estate liable to be defeated by the non-performance of a condition subsequent, will be forfeited for the want of performance of the condition, though the party by whom it ought to be performed was under the disability of coverture.

EJECTMENT for a farm of about ninety acres of land, situated in Stillwater, Saratoga county, tried at the circuit in that county before WILLARD, C. Judge, in May, 1844.

Philip Schuyler, being seized in fee of the premises, on the 9th day of May, 1801, executed a lease in fee to Frederick Coonley, at an annual rent of 10⅔ pence per acre. It contains a clause of distress, and provides that the lessor and his heirs may re-enter if rent should be in arrear for forty days after a demand thereof, and if no sufficient distress can be found on the premises. Coonley entered, and after occupying eight or nine years died in possession, leaving a widow and a daughter, the plaintiff in this suit, his only child and heir at law. The widow remained in possession two or three years after the death of her husband, when she married again and sold out to Ephraim Childs, who went into possession. General Schuyler died between 1801 and 1804, and on the 14th day of May, 1813, Mrs. Hamilton, his daughter, having succeeded to the estate of her father in the premises, by a deed with full covenants acknowledged on the day of its date in Saratoga county, conveyed them to Childs. The defendant is in possession under this title. The plaintiff was a *feme covert* at the death of her father and so continued until about two years before the trial, when her husband died.

The defendant insisted that under the circumstances of the case a re-entry by the lessor or his heirs ought to be presumed; but the judge, being of a different opinion, instructed the jury that the plaintiff was entitled to recover, and the defendant

excepted.   Verdict for the plaintiff, which the defendant moves to set aside on a bill of exceptions.

*N. Hill Jr.,* for the defendant.   1. The coverture of the plaintiff constituted no objection to a re-entry for the condition broken ; and of course it forms no impediment to the presumption of a re-entry. (*Com. Dig. Baron and Feme,* (*L,*) *and Condition* (*A* 10); 6 *Petersd. Ab.* 42; *Woodfall,* 317, 362; *Bac. Ab. Condition, F;* 4 *Kent,* 121, 1*st ed.; Cru. Dig. Estates on Condition, ch.* 2, § 19; *Clancy,* 179.)   2. A re-entry should be presumed, under the circumstances of the case. (2 *Caines,* 382; 3 *John.* 226; 6 *id.* 34; 20 *id.* 180; *Cowen & Hill's Notes, p.* 347.)

*S. Stevens,* for the plaintiff, cited 25 *Wend.* 389.

*By the Court,* JEWETT, J.   Schuyler granted to Coonley an estate in fee, subject to be defeated, among other things, by the non-payment of a certain yearly rent.   By the terms of the indenture the right of the lessor or his heirs to re-enter depended upon rent becoming due and payable ; its non-payment for forty days thereafter; its being lawfully demanded, and no sufficient distress found on the demised premises.   It was the case of a condition subsequent, and while the condition was unbroken, the estate remained in the same situation as if no such qualification had been annexed.   Coonley was seized and might have conveyed or devised or transmitted the inheritance to his heirs. (4 *Kent's Com.* 125, 5*th ed.*)   For a breach of the condition the lease was only voidable, and therefore the estate was not determined until the lessor re-entered, that is, brought an ejectment for the forfeiture; as it is a rule that when an estate commences by livery it cannot be determined before entry.

At the common law, when there is a condition of re-entry reserved for non-payment of rent, several things are required to be previously done by the reversioner to entitle him to re-enter. 1. A demand must be made of the rent; 2. The demand must be of the precise rent due; 3. It must be made precisely upon

the day on which the rent is due and payable by the lease; 4. It must be made a convenient time before sunset; 5. It must be made upon the land, and at the most notorious place on it; 6. If a place be appointed where the rent is payable, the demand must be made at that place; 7. A demand of rent must be made in fact, and so averred in pleading, although there should be no person on the land ready to pay it. If after these requisites have been performed by the reversioner, the tenant neglects or refuses to pay the rent, then the reversioner is entitled to re-enter; but no actual entry is necessary to be made by him into the land, but it is sufficient to bring an ejectment only. (1 *Saund. Rep.* 287, *n.* 16.) To obviate these niceties, in certain cases, the statute (4 *Geo.* 2, *ch.* 28,) was passed, which prescribed a particular mode of proceeding where the premises were left vacant and a half year's rent was due, there being no sufficient distress thereon. The twenty-third section of our statute concerning distresses, rents, &c. (1 *R. L. of* 1813, *p.* 440,) is in substance a copy of the second section of the statute of 4 Geo. with a proviso saving the rights of mortgagees of the lessee not in possession; and the same provision is re-enacted in the revised statutes, with some alterations providing relief for the tenant after judgment in ejectment, and even after execution executed. (2 *R. S.* 505, § 30, *and seq.*) The revised statutes also prescribe a method of proceeding in ejectment in two cases, to wit, one on a trial, the other in case of judgment by default. In the former case it must be proved on the trial that half a year's rent or more was in arrear from the tenant to his landlord; that no sufficient distress could be found on the premises to satisfy the rent due, and that the landlord had a subsisting right by law to re-enter for the non-payment of such rent. In the latter case the same thing must be made to appear to the court by affidavit. In such cases the service of the declaration is provided to stand instead of a demand of the rent in arrear, and of a re-entry on the demised premises. (*Id.*) Consequently if there is a sufficient distress upon the premises the landlord must still proceed at common law, as the statute does not extend to such cases. (*Doe* v. *Wandlass,* 7 *T. R.* 117.) The

right of the tenant can only be barred by ejectment under the statute, and by the expiration of six calendar months after execution executed. (*Jackson* v. *Elsworth,* 20 *John.* 181.) After the landlord has performed the requisites required by the common law to entitle him to re-enter, resort must be had to an ejectment to obtain the actual possession; and when obtained it is always uncertain, because the tenant at any time has the power to offer the landlord compensation, in order to found an application for relief in equity.

It is insisted by the counsel for the defendant that from the evidence in this case the law will presume that Mrs. Hamilton, who inherited the rent or reversion of the estate, re-entered for the non-payment of rent, and that the judge at the circuit ought so to have instructed the jury. If this be so, whether it was effected by ejectment at common law or under the statute, is wholly immaterial; for in either case the possession of the defendant would be rightful as against the plaintiff. It is not pretended that a re-entry by Mrs. Hamilton was proved by any direct evidence. Can it be presumed from the facts proved? Several cases have been cited to show that after a long possession adverse to the title under the lease, the law presumes a regular re-entry by the lessor at common law. In *Jackson* v. *Demarest,* (2 *Caines' R.* 382,) which is the earliest case in this court, a perpetual lease was executed in 1773, rent free for eight years, and after that at a rent of six pounds per annum, with a clause of re-entry. The lessees entered and remained in possession till 1778, when they went to Canada, leaving the premises vacant. In 1785 the lessor conveyed the premises to another, under whom the defendant held. After a possession of fourteen years under that title, the original lessee brought ejectment, and he was held to be barred by the presumption of a re-entry.

In *Jackson* v. *Walsh,* (3 *John.* 226,) there was a lease for three lives, containing a clause of re-entry, executed in 1774, under which the lessee entered and possessed until 1782, when he died in possession. His widow and children remained in possession until 1792, when she assigned the lease to one Lyons, who entered and remained until June, 1795, when the defen-

Garrett *v.* Scouten.

dant entered under a second demise from the original lessor. Rent had been paid under the first lease to May 1, 1783. Some imperfect evidence of a re-entry for non-payment of rent reserved by the first lease was given. The suit was by the heirs of the first lessee, some of the persons on whose lives the estate depended being alive. It was held that the evidence of a re-entry in fact was insufficient, and that the lapse of time was not sufficient to raise a presumption of a re-entry.

In *Jackson* v. *Elsworth*, (20 *id.* 180,) the facts were as follows: The owner of the premises leased them in 1779, for the life of the lessee and his wife, at a rent of $82 per annum, with a clause of re-entry for non-payment of rent or non-performance of covenants. The lessee entered and remained in possession until 1810, when he left the possession and the lessor entered and afterwards leased the land a second time, to the defendant, who entered and remained in possession until this suit was brought, in 1821. The suit was by the original lessee. He had given his note for the rent due May 1, 1809, which was unpaid. The court was of opinion that the lapse of time was not sufficient to raise a presumption of re-entry for non-payment of rent, either at common law, or under the statute.

The facts in the case under consideration bear a near resemblance to those in *Jackson* v. *Walsh*, above referred to. There, as here, the tenant died in actual possession, his widow continued in such possession, until she assigned her interest to a stranger, who took possession under her and finally took a conveyance under the landlord, there being from ten to twelve years rent in arrear. In that case this court held that the lapse of time alone did not afford the presumption of a legal re-entry. It seems to me that the facts here very strongly rebut the presumption insisted on, of a re-entry by Mrs. Hamilton, before she conveyed to Childs, and that they tend rather to show that Childs went into the possession under some agreement with or purchase from the widow of Coonley, who was then in possession in subordination to the title of the plaintiff, the heir at law of her father, and that being thus in possession, he took a conveyance from the owner of the reversion without a re-entry for

a condition broken.   I do not see that Childs or those claiming under him stand in any better situation than the widow would have stood, if she had, while in possession before a re-entry by Mrs. Hamilton, taken title under her.   (*See Phelan* v. *Kelly,* 25 *Wend.* 389.)   If she had done this, it could not have availed her as against the heir at law of Coonley, without showing a re-entry in fact, or proving facts from which the law would presume it, before the conveyance of the title.   At the common law, an assignee or grantee of a reversion could not enter for a condition broken ; for, to prevent all maintenance, the common law did not allow of an assignment of a title of entry or re-entry. (*Co. Litt.* 214 ; 1 *Saund. Rep.* 287, d. *N.* 16.)   Lapse of time alone is not sufficient to presume a re-entry ; it should be connected with the fact that the tenant had abandoned or left the premises vacant with rent in arrear.

That the plaintiff was a feme covert at the time the right of re-entry for the non-payment of rent accrued, is immaterial. Laches are chargeable upon the grantee of an estate, subject to a condition, for non-performance of the condition, even though such grantee, or his assignee, be an infant or feme covert.   (4 *Kent's Com.* 125 ;  *Co. Litt.* 246, *B.*)

I am of opinion that there was no error in the ruling of the circuit judge, and that a new trial should not be granted.

New trial denied.