## SUPREME COURT—IN EQUITY.

### L. KEELIKOLANI *vs.* JAMES ROBINSON.

GENERAL demurrer to the bill; that at the early settlement of these Islands by foreigners, there was no law of inheritance : overruled—the Court being of opinion that there was a common law of inheritance liable to be modified or defeated, but perfectly good until such an event.

An inheritance recognized by the King, as alleged in the bill, would be valid.

A tenant can neither deny his landlord's title in ejectment, nor set up an outstanding or paramount title in himself or a third party; but he must first restore the possession which he obtained from his landlord, and then as plaintiff, he may avail himself of any title he may have acquired.

General demurrer overruled, when there is any equity in the bill.

An eviction under a paramount title must take place before the lessee or grantee can avail himself of it as a defense on his own contract.

ALLEN, C. J., delivered his decision, overruling the demurrer taken to the amended bill, as follows :

It appears by the bill that Kalaimoku entered into an agreement with the respondent in which he assigned to him, his heirs, executors, administrators and assigns half of the wharf called the King's wharf, situate in Honolulu, and that said respondent for himself, his heirs, executors, administrators and assigns, agreed to pay half of all expenses incurred in altering, repairing and improving said wharf, and to pay Kalaimoku, his heirs, executors, administrators and assigns one-half of all the moneys received for the use of said wharf and premises, and said Kalaimoku agreed to pay half of all the expenses incurred in altering, repairing and improving said wharf.

The agreement bears date January 11, 1827.

Said respondent, in pursuance of said agreement, entered upon the premises, and has continued to occupy them till the day of filing the bill. And the bill further alleges that the respondent presented to the Board of Land Commission a claim based on the above recited agreement, and the following record and award was made, (the said) respondent having set forth that he was deprived of a portion of the land supposed to be included in the agreement referred to ; and His Excellency, Mataio Kekuanaoa, at that time acting for the heir of Kalai-

moku, having agreed to add to the portion described thereafter as Part 1st, that described as Part 2d : " We accordingly confirm the claimant James Robinson, his heirs, executors, administrators and assigns, in the same rights and privileges in the lot 'commonly called the Point,' and now including the additional piece under part No. 2, as they are both designated in the surveys of T. Metcalf, as set forth in the award, as were granted in the original conveyance, and given in full in this award, and subject at the same time to the same rules and conditions as are therein contained "—the whole instrument, as quoted, being now confirmed by this Board, in full application to the present claim, and correctly described in surveys of Part 1st and 2d.

It is further alleged in said bill, that said Kalaimoku deceased, about October, in the year 1827, leaving as his sole heir his son Leleiohoku, who inherited the property described in the agreement, and was acknowledged to be the heir of Kalaimoku by the King, and was treated and considered as the inheritor of the above described property by the said respondent ; that the said Leleiohoku was lawfully married to said complainant, and deceased intestate in the year 1848, leaving his son John Pitt Kinau, the son of complainant, his only heir, who thereupon became entitled to the property thereinbefore described ; and there had been allotted to complainant, as her dower, or a portion thereof, the lot described in Part 2d of said survey of T. Metcalf, and who held possession thereof from her said husband's decease, until the arrangement made as set forth in 1851, by the record of the Land Commission ; and that said John Pitt Kinau deceased, in the year 1859, being still a minor, that complainant, his mother, was his only lawful heir, and became entitled to his entire property, and is the inheritor of the property described in the bill.

The complainant avers that there has been no settlement, as she verily believes, or account rendered, although she admits that small sums have, from time to time, been paid and that a large sum is now due.

To this bill there is a general demurrer : 1st, on the ground that there were not at the time of the death of Kalaimoku, any inheritable estates in the Kingdom, and therefore his son, Leleiohoku, could not have inherited the estate in question.

2d. The title to land in this Kingdom is founded upon a Land Commission Award, a Royal Patent, or the Mahele (division) Book of 1848.

It appears by the bill that Leleiohoku was the son and only heir of Kalaimoku, and that he inherited the property, and was acknowledged to be the heir of Kalaimoku by the King, and was treated and considered as the inheritor of the property in question, by the respondent himself. It appears further, that Leleiohoku was lawfully married to the complainant, and that he died intestate in the year 1848, and leaving his son, John Pitt Kinau, the son of the complainant, his only heir, who, therefore, became entitled to the property in question.

And it is further averred by the bill, that John Pitt Kinau, deceased, in the year 1859, being still a minor, and that the complainant, his mother, was his own lawful heir, and became entitled to his entire property, and is the inheritor of the property referred to.

It appears further, on the application of the respondent, that the rights of the parties under the contract were recognized and confirmed by the Land Commission in 1851, at which time a separate piece of land, called Lot No. 2 in the survey, was recognized as included in the contract, in lieu of a portion of the King's wharf, which had been taken possession of by the Government.

But it is said there was no law of inheritance at that time. I am of opinion that there was a common law of inheritance, liable to be modified or defeated, but perfectly good until such an event. Therefore, by the bill, the title in Leleiohoku was complete.

I suppose that an inheritance recognized by the King, as alleged in the bill, would be valid at that time, even upon the theory of the counsel for the respondent.

As to a right of inheritance at that time, the agreement itself recognizes it. The respondent admits, by his agreement, that there was at that time a right of inheritance, and it is averred he held under Leleiohoku till his death, and he recognizes again the heirship of Kinau, the son of Leleiohoku, and his rightful heir.

The respondent admits, by the demurrer, the agreement and

L. Keelikolani *v.* James Robinson.

the occupancy ; and that he made a claim before the Land Commission for an award based upon the agreement, and that the Land Commission did confirm the claimant—the present respondent—his heirs, executors, administrators and assigns, in the same rights and privileges in the lot called the Point, with the additional piece substituted for a portion of the original lot, called "The King's Wharf," as was granted in the original conveyance and given in full in the award, and subject at the same time to the same rules and conditions as are therein contained, the whole instrument being confirmed, in full, on application to the said Board. In a word, the respondent, in pursuance of the agreement already adverted to, entered into the possession of the land, and enjoyed the same for more than thirty years, and recognized by his acts the son and heir of the original party to the agreement, and after some twenty-four years of uninterrupted possession, appeals to the Board of Land Commission to have his rights confirmed under the agreement, and by mutual agreement, receiving the possession of a lot of land allotted to the complainant, as dower, in lieu of a portion of the King's wharf—the land referred to in the original agreement—which was done by the Board in 1851, since which time he has continued in the same uninterrupted possession, enjoyed without let or hindrance.

When a vendee obtains and keeps possession of land under a contract of sale, which is not fulfilled, he will be estopped from setting up a defect in the title, as a defense to an ejectment by the vender, or on a suit for the purchase money.

Jackson & Hotchkiss (6 Cowan, 401), in Galloway *vs.* Turley (12 Peters, 264), it was held that a vendee who has gone into possession, under the vender, is virtually in the position of a tenant, and will not only be precluded from using the defects in the vender's title to deprive him of the land without paying for it, but will be compelled to make any steps which he may have taken to complete the title, subservient to the purposes of the contract, instead of a means of defeating it.

In Chattel & Pound, 1 Lo. Raymard, it was decided that although the tenant may plead *nil habuit in tenementis* to an action of debt for rent, he must fail at the trial if the landlord shows any interest, although limited to an estate at will, or a bare possession.

It is regarded now as the settled doctrine in England and the United States, that a tenant can neither deny his landlord's title in ejectment, nor set up an outstanding or paramount title in himself or a third party.

Philar & Kelly, 25 Wend., 392; in Jackson & Harper, 5 Wend., 246, the tenant set up an outstanding title in a third person, holding directly by letters patent from the State, in an action of ejectment against him, by his landlord, but the Court ruled that he was estopped from contesting the title under which he entered, as against his original landlord, or any other person who has acquired or succeeded to his title. He can no more show that the premises belonged to the State, than he can that this belonged to himself. In this case, letters patent from the State were produced, and a lease of the premises by the patentee to the defendant, still the Court ruled that he must first restore the possession which he had obtained from his landlord, and then as plaintiff he may avail himself of any title which he has been or may be able to acquire. In this case no paramount title has been set up.

The estopple is not limited to the original parties to the lease, but extends to all who come in under the tenant, or take by descent, or purchase from the landlord.

Lord Kenyon, in the case of Cook *vs.* Laxley, 5 T. R. 5, ruled that in an action for use and occupation, it ought not to be permitted to a tenant, who occupies land by license of another, to call upon him to show the title under which he let the land ; and the only question is, whether in this case, as in that, the same principles apply. Here the respondent entered into possession of the premises by an agreement with Kalaimoku, from whom by inheritance, as the complainant alleges, the estate has descended to her son, and at his death, to his mother, and he now refuses to fulfill the terms of the contract under an idea that he may contest the plaintiff's title. It is a general rule that the tenant shall not dispute the landlord's title, and no exception to it has been shown as applicable to this case.

Judge Wilde, in the case of George *vs.* Putney (4 Cush., 354), says that so long as the lessee is not disturbed in his occupation, he is bound by the contract to pay the rent, whether the lessor's title be defective or not.

It is equally clear that if the lessee is disturbed in his possession by a party having a paramount title, he is not liable. Any act equivalent to an ouster, is a defense of payment.

As the party cannot contest the title under which he holds, neither can he the title of the heir. The bill alleges that Kalaimoku died in 1827, leaving as his sole heir his son Leleiohoku, who inherited the property described in the agreement, and was acknowledged to be the heir of Kalaimoku by the King, and was treated and considered as the inheritor of the said property by the respondent.

The full Court ruled in a demurrer to the bill before it was amended, that a party cannot controvert the title under which he holds an estate, and the same principle applies to the heir when the lessor dies during the term, unless deprived of possession derived from his lessor by a paramount title, or when he was induced to accept possession from his lessor by fraud or mistake, and from some other exceptional causes, none of which have been shown as applicable to this case.

The Court said that the party is not permitted to question the title under which he holds by virtue of the contract. The rights of the parties by the bill are in question, and not a title adverse to the complainant. The Court feel it their duty to observe that these objections do not come with great force from a party who has been in undisturbed possession for thirty-four years, and especially when the contract was formally recognized on the respondent's application by the Land Commission as applicable to the "King's Wharf," and when the complainant herself appropriated a portion of land allotted to her as dower to make up for a portion of the land taken for Government uses from the "King's Wharf."

It is an admitted principle of equity pleading that if any part of a bill is good, that a general demurrer to the whole bill cannot be sustained. The universal rule in Chancery is that the defendant may meet the plaintiff's bill by several modes of defense. He may demur, plead, answer, and disclaim; but if he demurs generally, when there is any equity in the bill, or when he should have plead or answered any of the allegations, or should have disclaimed, the demurrer must be overruled.

It is a matter of history that when the islands were conquer-

ed by Kamehameha I., he divided a portion of the lands among his warrior chiefs, and they divided the lands entrusted to them to inferior chiefs, by whom they were sub-divided again and again.   All these persons were considered to have rights in the lands, or the productions of them; all persons possessing landed property paid a land tax to the King, which he assessed at pleasure, and also service, which was called for at discretion. The superior always had the power at pleasure to dispossess his inferior, but it was not considered just and right to do it without cause, and dispossession did not often take place except on the decease of one of the landlords, when changes were often numerous, and the rights of heirs and tenants comparatively disregarded.   It is very clear that heirs were recognized, and their rights continued until they in some mode were declared forfeit.   The Act of 1839 was designed to give additional protection to the persons of all the people, together with their lands, their building lots, and all their property.   It is expressly declared that the landlord shall not causelessly dispossess his tenant, and the law of inheritance was expressly recognized. But the Laws of 1839 and 1840 were not regarded as an adequate protection, and it was found necessary to adopt a new system for protecting rights when ascertained, and to accomplish this object the Land Commission was formed.   "The whole power of the King to confer and convey lands to which private and equitable claim now attaches, is reposed in the Commission. It had reference to his private or feudatory right as an individual participant in the ownership."   This is the language used by the Board of Land Commissioners.   So that when they made the confirmation as set forth in the bill, there was a clear recognition of the validity of the agreement, and the rights of the parties under it.

I will refrain from noticing in detail the very elaborate and ingenious argument of counsel for the respondent, for the principles of law which I regard as applicable to the case, render it unnecessary.

1st. The respondents cannot contest the title of Kalaimoku, as they are the parties to the agreement.

2d. Nor the title of his heir, who is alleged to be his son Leleiohoku ; and that he was recognized by the King as the heir ; and by the common law of that day could inherit.

3d. Nor can he contest the title of John Pitt Kinau, who is alleged to have been the son and only heir of Leleiohoku ; nor the title of the complainant, the mother, whom it is alleged to be his lawful heir, and become entitled to his entire property.

The respondent, by plea, may deny the truth of the allegations of the bill, viz : That the several persons named in succession were the heirs, but admitting the allegations, the demurrer must be overruled.

Even if the Government had rights in the land, and the Land Commission award was of no value, the respondent cannot avail himself of it as defense on his own contract until an eviction takes place. The Government may think proper not to assert any claim. It would be repugnant to every principle of law from the earliest times, as well as every principle of justice, that the tenant should put forward his apprehensions as a defense of payment. The counsel for the respondent do not seem to appreciate the distinction between his legal rights of defense in this case, and in the suit of a stranger against him for possession. In the latter case, their reasoning would apply, and they might well say we require evidence of a Land Commission award, or a Royal Patent, but he has recognized the complainant's title under which the complainant by his contract claims, and it is not competent for him to deny it, as long as he continues in undisturbed possession. The paramount title must be enforced, and even were this done, there is an equity in the bill for a certain portion of the income, if not for all, and the complainant has equity in her claim, arising from the lot she substituted in her own right, in lieu of a portion of the King's wharf taken by the Government. Whatever legal ground respondent may have to defeat the present bill by plea, it is very certain that a general demurrer cannot be sustained. It is therefore overruled with costs.

Messrs. Harris and Davis for complainant.

Messrs. Bates and Montgomery for respondent.