Doe d. on the demise of ISAAC BETTS and ELIZABETH BETTS, late ELIZABETH DEPUTY, his wife, v. RICHARD ROE, casual ejector, and SOLOMON DEPUTY and HENRY DEPUTY, tenants in possession.

IN an action of ejectment by husband and wife in right of the wife, to recover land embraced in a proceeding for partition in the Orphans' Court under the intestate law, in which the location of the land, their names and marriage, and that she was one of the children and heirs-at-law of the intestate are stated the record of such proceeding is sufficient evidence to go to the jury to prove that the land sued for lies in the county, and that she was a daughter and heir-at-law of the intestate, and is the wife of the plaintiff joined with her as her husband in the action.

An alienation bond executed nearly forty years ago, which, as a private paper, has regularly come into the possession of the heir of the intestate after the death of the latter, with other muniments of his title to his real estate, is admissible in evidence without proof of the signature of the subscribing witness after his death, and when no one can be found sufficiently acquainted with his hand writing to prove it.

In an action of ejectment by one of the heirs-at-law to recover her share of the land which was assigned as and for her dower in such a proceeding under the order of the Orphans' Court to the widow of the intestate after her death, both the widow and the ·other heirs-at-law will be thereby estopped from setting up or asserting any title to the premises other than that which was acknowledged and recognized in the proceedings in that court.

THIS was an action of ejectment by the plaintiffs, Isaac Betts and his wife, in her right to recover from the defendants, Solomon Deputy and Henry Deputy, the one undivided third part of a tract of land in Cedar Creek hundred, Sussex County. William Deputy, the father of the plaintiff's wife and of the defendants, died seized intestate of the land in question in 1841, leaving his wife, Elizabeth Deputy, to survive him, and also the children before mentioned, as his widow and only heirs at law; and at the March Term of the Orphans' Court in that year, Solomon Deputy, one of the defendants, presented a petition for the assignment of dower to his widow out of all the lands of which he died seized and possessed, and the partition of the residue among his said heirs at law; and by virtue of the proceedings thereupon had in that court, the tract in question was assigned to his widow for the term of her life, as and for her dower therein, and which she continued to hold as such, until her death in 1865, and this action was now brought by the plaintiff and wife to recover from the defendants who were in possession of the whole of it, her undivided third part in the reversion of it. The counsel for the plaintiff put the record of the same in evidence, but omitted to prove the location of the land, or the marriage of Betts and wife, the plaintiffs, or that the latter was a daughter of the intestate.

*Layton*, (*Cullen* with him) for the defendants, moved

to nonsuit the plaintiffs, first, because they had failed to prove by the testimony of any witness, that the land lay in the county, and secondly because they had also failed to prove that Mrs. Betts, the wife of the plaintiff, Isaac Betts, was the daughter and one of the heirs at law of William Deputy deceased, and to prove even, that she was the wife of Betts.

*Moore*, (*Redden* with him) for the plaintiffs.   Mr. and Mrs. Betts were married several years before the death of her father, and in the petition of the defendant, Solomon Deputy, to the Orphans' Court for the assignment of the dower and partition of the residue among his heirs at law, as well as in the proceedings had thereon in that court, the whole record of which was then in evidence before the jury, it was distinctly admitted and formally alleged that the land was located in Cedar Creek hundred, Sussex County, and that the plaintiffs, Isaac Betts and Elizabeth Betts. were man and wife, and that she was one of the three children and heirs at law of the intestate, William Deputy deceased.   And it further appeared by the record of the proceedings, that they then took as such, one-third of the residue of his real estate in the partition of it among his three children and heirs at law.

*By the Court.*   The evidence is sufficient to go to the jury, and the motion for a nonsuit is overruled.

The counsel for the defendants then put in evidence a deed of bargain and sale from James R. Hudson for the land in question to the widow, Elizabeth Deputy, for the term of her life, and after her death, remainder in fee to her sons Solomon and Henry Deputy, the defendants, executed on the 24th day of December 1841, and recorded in the office of the Recorder of Deeds in and for the county in the year 1867; also an alienation or conveyance bond for the same tract of land from Molten Hudson to William Deputy, the deceased, executed on the 25th day of November 1830, and stated that the subscribing wit-

ness to the execution of it had long been dead, and no person could be produced who was sufficiently acquainted with his hand writing to prove his signature, and that they would, therefore, offer it in evidence as a private paper which had regularly come into the possession of the defendants with the muniments of title to other lands owned by him, from their father after his death, and which upon a critical examination had been found to be the only paper title, such as it was, he ever had for the tract of land then in dispute, and which by reason of its antiquity, and the facts just stated which they were prepared to prove, was admissible in evidence *per se*, and without proof of the signature of the witness, or its execution or delivery.

*Moore* objected to the admissibility of it notwithstanding the facts stated, and denied that it had ever been executed or delivered in the life time of William Deputy, and contended that the secrecy and long concealment of the deed from James R. Hudson the son of Molten Hudson, the obligor in the conveyance bond, which had just been put in evidence, cast a strong suspicion of fraud upon the validity of it.

*By the Court.* The bond purports to have been executed nearly forty years ago, and if the facts stated in connection with it are admitted, it is admissible in evidence without proof, on the score of age and antiquity.

*Moore and Redden* contended that the defendants were estopped by the record of the proceedings in the Orphans' Court, from setting up any title to the premises in question, either in the widow, Elizabeth Deputy, or in themselves, other than that which was admitted and acknowledged by them, and was recognized and established by the order and decree of that court in the case; and although the title of William Deputy to the land was but an equitable title in its inception under the conveyance bond from Molten Hudson in 1830, his long con-

73

tinued and uninterruped possession of it as his absolute property, had converted it by presumption and intendment of law into a legal title, and that the possession of it by his widow, as tenant in dower of it for the term of her life, under the proceedings and decree in the Orphans' Court, was in contemplation of law but a continuation of her husband's possession of it in his life time, after his death, and until her own decease. 11 *Pet.* 41. *Adams on Eject.* 61. 2 *Wend.* 387. 1 *Cruise sec.* 14. Where the plaintiff shows title and the defendant enters under that title, he cannot be permitted to deny or controvert it, or to set up any other title inconsistent with it, or in contradistinction to it. 4 *Harr.* 521. 1 *Harr.* 116. 3 *Harr.* 103. 1 *Houst.* 334. 7 *Johns.* 158. 10 *Johns.* 292. 12. *Johns.* 201. 13 *Johns.* 316,463. 5 *Wend.* 246. 11 *Cow.* 581. 6 *How.* 284. 2 *Harr.* 581. 25 *Wend.* 389. 2 *Smith's Ld. Ca.* 581. *Adams on Eject.* 89.

*Layton and Cullen.* A party will not be bound or estopped by his admissions, if they were. made under a mistake or misapprehension in point of law, unless the other party has acted upon them, or will be prejudiced by the proposed remedy or correction of it. The title of William Deputy to the tract of land in question, was not known to any of the parties to the proceedings in the Orphans' Court at the time when it was instituted or when it was concluded ; and as it was assigned to the widow for her dower, and she held it during her life and was now dead, and the heirs at law, in any event, take all the land they get from him by descent and without it costing them any thing, there could be no wrong or injury done to any of them by recognizing in this suit, the legal title to have been in the widow for the term of her life, and after her death, in the defendants in fee, as it really was under the deed of James R. Hudson to her, executed in 1841, and in less than twelve years after the equitable title to it had been conveyed by the alienation bond of his father to the intestate, William Deputy, notwithstanding the ignorance

of all the parties as to the legal effect of it until after the conclusion of the proceedings in the Orphans' Court. 1 *Greenl. Ev. secs.* 206,207,210. 64 *E. C. L. R.* 925. 6 *Pick.* 455. 3 *Hill* 215. 16 *Pick.* 491. 17 *E. C. L. R.* 449 1 *Hill* 121. 2 *Hill* 526. 25 *Wend.* 389. 1 *Houst.* 334.

*The Court, Houston, J., charged the jury*, that by virtue of the petition of the defendant, Solomon Deputy, at the March Term 1841 of the Orphans' Court of the county, representing the premises in question to be a part of the lands and tenements whereof his father; William Deputy died seized in his demesne as of fee, leaving to survive him his widow, Elizabeth Deputy, and three children, namely, Solomon Deputy, Henry Deputy and Elizabeth, who had intermarried with, and was then the wife of Isaac Betts, as his heir-at-law, and praying an assignment of the one-third part of all the lands and tenements of which he so died seized and possessed, to his widow, Elizabeth Deputy, for the term of her life, as and for her dower therein, and for the partition of the residue in three equal parts among his said children and heirs at law in fee simple, and the proceedings thereon in that court in which the same was so ordered and decreed, and the tract of land in dispute in this action, was with other lands and tenements therein mentioned, so assigned to his widow, Elizabeth Deputy, for the term of her life, as and for her dower therein, and the residue in severalty among the said children and heirs-at-law, as prayed for, the record of which was in evidence before them, the defendants were concluded and estopped from setting up or asserting in this or any other collateral action or proceeding in regard to the premises in question, any other right, title or claim in Elizabeth Deputy, than that which she took, as the widow of William Deputy, for the term of her life, as tenant in dower thereof, under the final order and decree of that court in that proceeding; or that she, or they, or either of them, have since acquired any right or title thereto, inconsistent with, or paramount to the

legal title in fee simple therein expressly acknowledged and recognized to have been in William Deputy to the same, at the time of his death, and when the assignment of her dower and the partition of the residue was so ordered and decreed in that court; or that the defendants, or either of them, have had since her death any right or title whatever to it, or any part of the tract, other than that which they have in the reversion and in co-parcenary with the plaintiff's wife, Elizabeth Betts, as the three children and heirs-at-law in fee of their father, William Deputy, deceased. And this was sufficient of itself, without saying any thing more, to determine the present case. But as a deed had been put in evidence by the defendants, from James R. Hudson executed since the death of William Deputy, and purporting to convey the particular tract in controversy, to Elizabeth Deputy for life, and after her death, in remainder to the defendants, in fee, and bearing date December 24th. 1841, but not recorded until the year 1867, the court would simply say in regard to it, that there was no evidence that Elizabeth Deputy ever claimed or pretended to own or hold the land under it, or that she was ever in possession of it, or even knew of its existence in her life time, and that it was not recorded until after her death. And yet, if the contrary of all this had been proved, it could not have altered the legal aspect and conclusion of the case; for in that event, she would have been no less estopped than the defendants were by the record of the proceedings in the Orphans' Court, and by her assent to, and long acquiescence in the assignment of her dower under it, from pretending or asserting that she held the premises by virtue of any other right or title whatever. The plaintiffs were therefore entitled to recover the one undivided third part of the premises in question.