[No. 8492. In Bank. — November 30, 1886.]

OWEN TULLY, APPELLANT, v. JOHN TULLY, RE-
SPONDENT.

TENANTS IN COMMON — TRUSTEE HOLDING LEGAL TITLE — ESTOPPEL. — In 1856, the land in controversy was part of a Mexican grant, for which a patent was subsequently issued by the United States. In that year, the plaintiff and defendant, supposing the land to be public land, purchased the same from a party in possession, taking a conveyance thereof in their joint names. The defendant paid the entire consideration for the purchase, immediately entered into the exclusive possession, and so remained for about twenty-four years, until the commencement of this action, with the exception of one year, when he rented it to the plaintiff. In 1861, the defendant procured the true title to the land to be conveyed to him by the grantees of the patentee, and paid the consideration

therefor out of his own funds. The plaintiff, until about one year before the commencement of this action, never offered to pay the defendant any portion of the consideration paid by him for the true title, and never requested a conveyance of any interest in the premises, nor did he ever attempt or offer to enter into possession, or claim any right to the possession thereof. The action was brought to recover an undivided one half of the land. *Held,* that the plaintiff, under the purchase of 1856, did not become a tenant in common with the defendant, but was a mere trustee holding whatever title was so acquired for the defendant, and that the latter was not estopped to set up the true title subsequently acquired by him.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order refusing a new trial.

The facts are stated in the head-notes and opinions.

*S. F. Leib,* and *W. G. Lorigan,* for Appellant.

Under the purchase of 1856, the plaintiff and defendant became tenants in common, under a common source of title. Neither can go behind it to the prejudice of the other. (*Whitman* v. *Steiger,* 46 Cal. 256; *Spect* v. *Gregg,* 51 Cal. 198; *Olney* v. *Sawyer,* 54 Cal. 379; *Rego* v. *Van Pelt,* 65 Cal. 254.) The action not being in equity, the court cannot determine that the plaintiff took the title acquired under the purchase of 1856 in trust for the defendant, on the ground that the latter paid the entire consideration.

*Archer & Lovell,* for Respondent.

The defendant is not estopped from asserting the after-acquired title. (*Lawrence* v. *Webster,* 44 Cal. 387; *Olney* v. *Sawyer,* 54 Cal. 380; Freeman on Cotenancy, sec. 153–155.)

THORNTON, J.—This is an action of ejectment to recover a parcel of land in Santa Clara County.

When the first purchase was made, in 1856, the whole purchase-money (nine hundred dollars) was paid by the defendant, John Tully. Under this purchase, John Tully

took and received from his vendor and grantor the exclusive possession of the land in suit. In pursuance of this purchase, the deed was made by procurement of John Tully to the plaintiff, Owen Tully, and himself.

Under this purchase of 1856, no title whatever was acquired. The land bought was at that time supposed, both by John Tully and his grantor, to be public land. This was not so. The land was part of a Mexican grant formerly made to Antonio Chaboya, to whom a patent including the premises was regularly issued by the United States in November, 1858. In February, 1861, John Tully acquired by a proper conveyance the true title to this land from the vendees of Chaboya, paying from his own funds therefor the sum of four thousand four hundred dollars.

The history of the possession is correctly given in a dissenting opinion herein drawn up by Justice McKee. It appears that John Tully has been in the exclusive possession of this land, claiming the same as his own for about twenty-four years prior to the commencement of this suit; and since the purchase of the true title in 1861, plaintiff has never offered to pay to defendant any portion of said sum of four thousand four hundred dollars, and has never requested defendant to convey to him any portion or interest in the premises nor has he ever attempted or offered to enter into possession of this land, or claim any right to the possession thereof, until one year next before the commencement of this action.

In this action, which is ejectment, the paramount legal title usually prevails. This legal title is with defendant, and must prevail, unless the defendant is prevented by law from availing himself of it.

It is urged on behalf of plaintiff that he is so prevented, that he is estopped from using such title, because, when he acquired this title in 1861, he was in possession as tenant in common with plaintiff. We do not think he was really so in possession. The plain-

tiff, though apparently tenant in common, really was not. He was a mere trustee of defendant for such title as was acquired by the purchase and conveyance made in 1856. The defendant, as appears from the above statement, paid the whole, purchase-money upon the purchase of 1856, and caused the deed thereon to be made to plaintiff and himself. The plaintiff's tenancy in common amounted only to holding the legal title in trust for defendant, which title the defendant had the undoubted right, when he made the purchase in 1861 and received a conveyance thereunder, to have had conveyed to him by plaintiff. Plaintiff, being a mere naked trustee for defendant, would not, in offering to pay one half of the purchase-money under the purchase of 1861, be entitled to have any portion of the true title then purchased conveyed to him. Equity would not clothe plaintiff with any such right. His being trustee for the defendant would rebut such equity. Under these circumstances, though the action is ejectment, we must hold that defendant is not estopped from availing himself of the true title to protect his possession.

We think the judgment and order should be affirmed, and it is so ordered.

MYRICK, J., MORRISON, C. J., and SHARPSTEIN, J., concurred.

McKINSTRY, J., dissenting. — I dissent. It was held in *Olney* v. *Sawyer,* 54 Cal. 379, that in an action at law by one tenant in common against another, to be let into the possession of demanded premises, the defendant cannot justify an ouster of the plaintiff by setting up an outstanding title,—even if it be the true title,—purchased by him while in possession under the common title.

As this case is presented by the pleadings, the appeal must be determined by reference to the strictly legal rights of the respective parties. So regarding it, it was

the duty of the defendant to let the plaintiff into the common possession. He might then have asserted his paramount legal title in a separate action.

It was decided by the former Supreme Court of New York in 1841, that when a parent having a possessory title to lands dies in possession, leaving several children his heirs at law, who succeed to such possession, it is not competent for one of such heirs, who has obtained exclusive possession of the whole of the premises, to defeat a recovery by his co-heirs of their proportional parts or shares by setting up a title acquired from the *owners* of the land. He must surrender possession to his co-heirs and then bring ejectment. Nelson, C. J., said: "One of the co-heirs, having derived his possession from the common ancestor, as well as through his co-heirs, is disabled while standing on this possession from disputing their title. I do not deny that the title thus set up may be valid, nor but that the party may avail himself of it after surrendering this possession. In a court of law he clearly could. There might be considerations existing between the co-heirs that would lead a court of equity to declare the purchase to have been made for the benefit of all upon proper terms." (*Phelan* v. *Kelley*, 25 Wend. 389.) In the case at bar the plaintiff and defendant entered into the possession as tenants in common under a title derived from the same source, the defendant holding for the plaintiff to the extent of the latter's interest.

Under our system, the equitable considerations referred to by Chief Justice Nelson could be alleged in a cross-complaint. And if it appeared, for example, that the co-tenant who had been let into the possession by the purchaser of the outstanding title had paid or tendered, within a reasonable time, his proportionate share of the cost of acquiring the true title (or elected with reasonable diligence to participate in the purchase), equity might hold the purchase to have been made in part for his benefit. (*Mandeville* v. *Solomon*, 39 Cal. 125.)

But even if it should me made to appear that the party
had indicated his intention with reasonable prompti-
tude to participate in the purchase of the true title,
there might be controlling equities which would prevent
him from obtaining a decree for a conveyance of such
title to an aliquot portion. Thus, in the case at bar, it
would seem that the present plaintiff had but the naked
legal conveyance to an undivided moiety of the original
possessory title, — the defendant having paid the whole
of the purchase price. If, in an action brought by the
defendant here to recover the whole possession, after
letting plaintiff into the common possession, the defend-
ant in such action should rely upon his equitable right
to the benefit of the true title on payment of his share
of the purchase-money, and it should be made to appear
that he had neglected and refused to pay to the plaintiff
therein his part of the original purchase, — the purchase
of the possessory title, — it may be a court of equity
would refuse a decree for a conveyance of any portion
of the true title. It is apparent, too, that the issues
might be complicated by questions as to the validity of
a purchase made in part in the name of Tully (plain-
tiff herein), with a view to securing for the present de-
fendant the government title to more land than he was
authorized to acquire directly under the statutes of the
United States. It is enough to say that these matters
cannot be gone into under the pleadings in the present
action.

If facts exist (independent of the conveyance of the
true title to him) which give the defendant a perfect
equity, on which he could defend his exclusive posses-
sion in the present action of "ejectment," those facts
have not been pleaded herein. It is settled that to es-
tablish such a defense in ejectment the facts constituting
the perfect equity must be alleged in the answer as fully
as they are required to be in a cross-complaint. (*Arguello*
v. *Bours,* 67 Cal. 477; *Kentfield* v. *Hayes,* 57 Cal. 409.)

As I understand it, the defendant here has been given all the benefit of a decree declaring a resulting trust in his favor in land to which he cannot deny the plaintiff has the legal title, without any pleading on which such decree could be based.

It may be said that, to prevent circuity of actions, the defendant here should be permitted to retain the exclusive possession. Why compel him to let the plaintiff into the possession only that the plaintiff may be excluded again under a judgment in an action brought by the present defendant?

But, 1. It may be that in such new action the present plaintiff would be held entitled to participate in the true title; 2. On authority of *Olney* v. *Sawyer, supra,* the defendant cannot in this action rely on his acquisition of the paramount title; 3. The same objection might be made in every case where the rule applies that a tenant cannot dispute his landlord's title.

As was said in *Phelan* v. *Kelley, supra,* "the rule of law that a person coming into possession of lands under the agreement or license of another cannot be permitted to deny the title of the latter when called upon to surrender, is of almost universal application. Even if he had a valid title *at the time,* he is deemed to have waived it, and as between the parties, to have admitted title in the person under whom he entered." (Citing cases.)

Of course, one of two co-tenants may oust the other, and acquire the exclusive title by adverse possession.

But the statute of limitations was not pleaded herein, and the plaintiff objected to evidence tending to prove the defendant's adverse possession on the ground that the same was irrelevant, incompetent, immaterial, and not pertinent to any issue in the case. Moreover, if the limitation had been pleaded, the transcript contains no finding of the fact that the defendant has had adverse possession for the statutory period, nor any finding which includes a finding of adverse possession. As a

conclusion of law from preceding findings of fact, the court below held that the plaintiff was barred by sections 318 and 319 of the Code of Civil Procedure, and the bill of exceptions expressly recites that no other facts were proved than those set forth in the five findings.

The facts stated in the five findings do not establish adverse possession, for the reason, among others, that there is no statement that the defendant has paid any taxes on the demanded premises, or that no taxes were assessed thereon.

McKEE, J., dissenting.—I dissent.    The action is one at law, in which the plaintiff asks to be let into possession of a tract of land containing about 236 acres, in which he claims to be a tenant in common with the defendant.

The title asserted by the plaintiff to an undivided one half of the land is derived from a deed made to himself and the defendant on the 11th of November, 1856.    Under that deed, defendant entered into the exclusive possession of the land, and occupied it exclusively until the fall of the year 1859, when he delivered possession to the plaintiff, who entered upon the land and cultivated it during the farming season of 1860, upon an arrangement with the defendant to cultivate the same on shares. In November, 1860, the plaintiff withdrew from the possession, and the defendant re-entered, and continued to exclusively occupy and enjoy the use of the land.

Meantime, the land was claimed to be within the boundary lines of a Mexican grant, which had been finally confirmed to the claimant, to whom the United States issued a patent for the land.  And on the 27th of February, 1861, the defendant, being in possession, acquired by purchase the outstanding patent title, by a deed which he took in his own name, and caused to be recorded on the 13th of March, 1861; and from the date of the deed until the commencement of this action,—a

period of twenty-four years,—he has been in the actual exclusive possession of the land.

Upon these facts, the court below held that the defendant, having been continuously in the actual and exclusive possession of the land, claiming to be the owner thereof in hostility to the plaintiff, was the legal and equitable owner, and " that any and all right of the plaintiff, if any he ever had, was barred by the provisions of sections 318 and 319 of the Code of Civil Procedure before the commencement of this action, and that defendant is entitled to judgment for his costs." I think the decision is erroneous.

The defendant did not claim by his answer to have derived any title to the land from an adverse possession of the same sufficient to give him title under the statute of limitations.

The answer contained: 1. A general denial; 2. Affirmative allegations of seisin in fee for over twenty years; 3. Allegations that the cause of action was barred by the provisions of section 319 of the Code of Civil Procedure; and 4. That the cause of action did not accrue to the plaintiff within five years before the commencement of the action.

These were the only issues made by the pleadings.

Now, as plaintiff and defendant originally acquired title to the land in common, the actual and exclusive possession thereof by defendant did not affect the plaintiff's right; for defendant's possession as a tenant in common with the plaintiff, in whatever title they had to the land, was the possession of the plaintiff. (*Waring* v. *Crow,* 11 Cal. 366; *Knox* v. *Marshall,* 19 Cal. 617; *Colman* v. *Clements,* 23 Cal. 245; *Owen* v. *Morton,* 24 Cal. 373; *Miller* v. *Myers,* 46 Cal. 535.)

That possession continued while the relation of tenants in common existed; and the legal presumption is, that the relation continued to exist until the defendant ousted and disseised the plaintiff, by notice, express or

implied, that he claimed the land adversely to the plaintiff, or by acts and declarations equivalent to notice of such a claim.    There was no evidence, and there is no finding, that defendant in or by his actual possession ever ousted and disseised the plaintiff.    The basis of the decision and finding is the fact of twenty-four years of exclusive actual possession by the defendant.    But that possession, held by the defendant as a tenant in common with the plaintiff, did not divest the plaintiff of his rights in the land, or vest absolute title to the land in the defendant, either by the purchase of an outstanding title, or under the statute of limitations.

There is no doubt that a tenant in common in exclusive actual possesson of land held in common may buy in an outstanding title, and take a conveyance thereof to himself alone; but the purchase does not *per se* dissolve the tenancy in common between himself and his co-tenant; the title acquired inures to the benefit of both. The general rule is, that a tenant in common who buys in an outstanding title holds it in trust for his co-tenants. (*Mandeville* v. *Solomon*, 39 Cal. 135.)    The mere fact of the purchase does not affect their legal relation; nor is it affected by mere seisin and possession of one after the purchase, however long continued; nor does such a possession constitute an adverse possession, which sets in motion the running of the statute of limitation.    There can be no adverse possession against a co-tenant out of actual possession until ouster and disseisin.    The tenant in common out of actual possession has the right to assume that the actual possession of his co-tenant is his possession, and is held under and in subordination to their common title, whatever it be, and that the exclusive possession is not adverse to him.

It is true, there arises out of the purchase of an outstanding title an additional relation between a tenant in possession and his co-tenant out of actual possession, namely, that of trustee and *cestui que trust*.    But the

rights and remedies incident to this new relation, being distinct from the legal ownership of the land, are exclusively cognizable in equity.

This is not an equitable action; it is an action at law,— ejectment for the recovery of real property,— in which the court below could only try and determine the issues raised by the pleadings in the case. There was no issue before the court that the defendant held and possessed the land upon the claim of title, written or unwritten, adversely to the title of the plaintiff, as tenant in common with the defendant, for five years before the commencement of the action. (Code Civ. Proc., secs. 321-323, 325.)

Sections 318 and 319, upon which the court below based its decisions, are inapplicable. The first provides that no action can be maintained for the recovery of real property unless the plaintiff, his ancestor or grantor, was seised or possessed of the property vithin five years before the commencement of the action. But being a tenant in common with the defendant, the plaintiff was so seised until the defendant's possession became hostile or adverse. Besides, section 318 is not pleaded at all; section 319 is the only one pleaded; but, as has been held, that section was never intended to apply to an action of ejectment. It has reference only to *personal* actions founded upon title to real property. (*Richardson* v. *Williamson*, 24 Cal. 301.)

I think the judgment and order should be reversed, and the cause remanded for further proceedings.